## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MGSY CORPORATION,<br>an Illinois corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LIVEUNIVERSE, INC., a California corporation, and<br>BRAD GREENSPAN, an individual,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | FILED: AUGUST 1, 2008<br>08CV4378<br>JUDGE GOTTSCHALL<br>MAGISTRATE JUDGE DENLOW<br><br>**Case No.**<br>　TC |

### COMPLAINT FOR BREACH OF LEASE AND PERSONAL GUARANTY

Plaintiff, MGSY Corporation ("MGSY"), for its Complaint for Breach of Lease and

Personal Guaranty against Defendants LiveUniverse, Inc. ("LiveUniverse") and Brad Greenspan

("Greenspan") alleges and states as follows:

### PARTIES

1.　　Plaintiff MGSY is a corporation organized and existing under the laws of the

State of Illinois, with its principal place of business located at 7620 North Osceola Avenue,

Niles, Illinois.  MGSY is a citizen of Illinois.

2.　　On information and belief, Defendant LiveUniverse is a corporation organized

and existing under the laws of the State of California, with its principal place of business located

at 9255 Sunset Boulevard, West Hollywood, California.  LiveUniverse is a citizen of California.

3.　　On information and belief, Defendant Greenspan is an individual residing in

California, whose address is 818 N. Doheny Drive, #802, West Hollywood, California.

Greenspan is a citizen of California.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332. This is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

5.     Personal jurisdiction exists over LiveUniverse because LiveUniverse has sent lease payments to MGSY in Illinois and has attempted to negotiate with MGSY in Illinois.

6.     Personal jurisdiction exists over Greenspan because he has personally guaranteed LiveUniverse's obligations to MGSY and has caused LiveUniverse to send lease payments to MGSY in Illinois and has attempted to negotiate with MGSY in Illinois.

7.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions occurred in this District, including Defendants' submission of previous Lease payments to MGSY in this District and Defendants' failure to make the current Lease payment due to MGSY in this District.

### COUNT I - LIVEUNIVERSE
### BREACH OF CONTRACT

8.     Non-party US Capital Equipment Leasing, Inc. ("US Capital") is a leasing company that specializes in providing operating lease financing for high-technology equipment, software licenses and services, warehouse racking systems and other capital equipment for lessees. From time to time, US Capital assigns executed leases to third-party investors.

9.     On or about March 1, 2007, LiveUniverse and US Capital entered into a Master Lease Agreement (the "Master Lease Agreement"). A copy of the Master Lease Agreement is attached hereto as Exhibit A. The Master Lease governs the obligations of LiveUniverse with respect to equipment leases entered into between US Capital as lessor and LiveUniverse as lessee. The Master Lease Agreement contemplates the execution of Rental Schedules pursuant

to the terms and conditions of the Master Lease Agreement, and each Rental Schedule constitutes a separate lease.

10.     On or about July 13, 2007, LiveUniverse and US Capital entered into Rental Schedule No. US 1195-004 to the Master Lease Agreement ("Schedule 1195-004"). A copy of Schedule 1195-004 is attached hereto as Exhibit B. Schedule 1195-004 is attached to and governed by the terms and provisions of the Master Lease Agreement. Schedule 1195-004 and the Master Lease Agreement are herein referred to collectively as the "Lease."

11.     Under the terms of the Lease, US Capital agreed to lease to LiveUniverse, and LiveUniverse agreed to lease from US Capital, technology equipment as identified in the Equipment List attached to Schedule US1195-004 (the "Equipment"), the cost of which was $482,270.02. The Lease became effective on July 13, 2007. The Lease specifies that it shall remain in effect for a term of eight (8) Quarters and that the amount of each quarterly rental payment is $69,302.20 plus applicable taxes.

12.     On or about July 13, 2007, LiveUniverse received an accepted the Equipment subject to the Lease.

13.     On or about August 20, 2007, US Capital assigned its right, title and interest to and in the Lease to Plaintiff, MGSY (the "Assignment"). Since that time, MGSY has been the Lessor under Schedule 1195-004 and Live Universe was notified of the assignment and that its rental payments were to be sent to MGSY.

14.     The Lease constitutes a valid and enforceable contract between Lessor and LiveUniverse.

15.     Pursuant to the Lease, LiveUniverse was and is obligated to make quarterly payments in the amount of $69,302.20 plus use tax. On May 30, 2008, a quarterly Rent payment

in the amount of $75,019.63, comprised of $69,302.20 in rent and $5,717.43 in use tax (the "July-September Quarterly Payment") was billed and due on July 1, 2008. The invoice for the July-September Quarterly Payment, which directed LiveUniverse to make payment directly to MGSY, is attached hereto as Exhibit C.

16.     LiveUniverse failed and refused to make the July-September Quarterly Payment when due as required by the terms of the Lease.

17.     The Lease, in Paragraph 14 of the Master Lease Agreement, specifies that "Lessee shall be in default hereunder if (i) Lessee fails to pay Rent or any other payment required hereunder within ten (10) business days of the due date thereof . . . ." (Master Lease Agreement, ¶ 14.)

18.     Accordingly, when LiveUniverse failed to timely make the July-September Quarterly Payment, US Capital issued a Notice of Default declaring LiveUniverse in default of the Lease agreement and demanded that LiveUniverse make full and immediate payment to Lessor (the "Notice of Default").  A copy of the Notice of Default is attached hereto as Exhibit D.

19.     LiveUniverse failed and refused to make immediate payment in full of the July-September Quarterly Payment pursuant to the Notice of Default, and instead paid only $19,746.22.

20.     Paragraph 14 further provides, in relevant part, that:

"if Lessee is in default, Lessor shall have the right to . . . by written notice to Lessee, . . . declare due and payable, and the Lessee shall without further demand, forthwith pay to Lessor an amount equal to any unpaid Rent then due as of the date of such notice plus, as liquidated damages for loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value as set forth in the Schedules.  Lessee shall return the Equipment to Lessor as provided in Section 12."

(Master Lease Agreement, ¶ 14.)

21.     As permitted by the terms of the Lease, on July 24, 2008, Lessor provided written notice to LiveUniverse declaring due and payable the Stipulated Loss Value of the Equipment in the amount of $361,702.51 (the "Demand for Payment"). Lessor further demanded return of Equipment as provided in the Lease. A copy of the Demand for Payment is attached hereto as Exhibit E.

22.     LiveUniverse failed and refused to pay the Stipulated Loss Value as required by the Demand for Payment.

23.     Lessor has fully performed under the Lease.

24.     LiveUniverse, by refusing to pay the amounts due pursuant to Paragraph 14 of the Master Lease Agreement and as identified in the Notice of Default and the Demand for Payment, and by failing to return the Equipment, has materially breached the Lease and has caused damages in the principal amount of $416.975.92, which includes (a) the unpaid partial July-September Quarterly Payment in the amount of $55,273.41; and (b) the Stipulated Loss Value of $361.702.51.

25.     Paragraph 3 of the Master Lease Agreement provides that "[i]f any Rent or other amount due hereunder is not paid within ten (10) days after the due date thereof, Lessor shall have the right to add and collect and Lessee agrees to pay a late charge in the amount of 5% for each month or partial month that the amount remains unpaid. As such, LiveUniverse is liable for late fees in the amount of 5% monthly of all amounts due and owing. The late fees to date are $20,848.80 for the month of July, 2008.

26.     Under the Master Lease Agreement, Paragraph 14(c), LiveUniverse also is liable for all reasonable legal and collection fees, costs and expenses arising from Lessee's default and

the exercise of Lessor's remedies under the Lease.

27.    LiveUniverse, by refusing to pay the amounts due, has materially breached the Lease and has directly and foreseeably caused Lessor damages in the amount of $416,975.92, plus late fees in the amount of $20,848.80, plus additional late fees until such time as the past-due amounts are paid in full, plus Lessor's attorneys' fees and costs.

WHEREFORE, Plaintiff, MGSY Corporation, respectfully requests that this Court order Defendant to return the Equipment to Plaintiff and enter judgment in Plaintiff's favor and against Defendant LiveUniverse, Inc. in the amount of $416,975.92, plus late fees in the amount of $20,848.80, additional late fees through such time as the past-due amounts are paid in full, attorneys' fees and costs, and grant such further relief as this Court deems equitable and just.

## COUNT II - GREENSPAN
## BREACH OF GUARANTY

28.    MGSY realleges and incorporates by reference paragraphs 1 - 27 as Paragraph 28 of Count II.

29.    On or about March 1, 2007, US Capital and Greenspan entered into a Lease Guaranty (the "Guaranty"). A copy of the Guaranty is attached hereto as Exhibit F.

30.    Under Paragraph 1 of the Guaranty, Greenspan unconditionally, absolutely and irrevocably guaranteed the full and complete payment of all amounts of rent and all other obligations due or payable by LiveUniverse under the Lease, including all payments due to Lessor's successors or assigns.

31.    Paragraph 5 of the Guaranty further provides that the Guarantor expressly consents to any assignment of the Guaranty by US Capital.

32.    On or about August 20, 2007, US Capital assigned its right, title and interest to and in the Guaranty to Lessor.

33.     As alleged hereinabove, LiveUniverse has failed to pay the amounts due pursuant to Paragraph 14 of the Lease in full, including the balance of the July-September Quarterly Payment and the Stipulated Loss Value.

34.     LiveUniverse also has failed to pay late fees of 5% per month or partial month as provided for under the Lease, and the late fees to date are $20,848.80.

35.     Lessor has performed all obligations required of it under the Guaranty.

36.     As set forth above, Lessor has suffered a loss and been damaged in the principal amount of $416,975.92, calculated as the unpaid partial July-September Quarterly Payment in the amount of $55,273.41 plus the Stipulated Loss Value of $361,702.51.  In addition, under the terms of the Lease and as set forth above, Lessor is entitled to late fees to date in the amount of $20,848.80, additional late fees through the date of through such time as the past-due amounts are paid in full, and attorneys' fees and costs.

37     Greenspan is liable on the Guaranty in the amount of $416,975.92, plus late fees to date in the amount of $20,848.80, plus additional late fees through such time as the past-due amounts are paid in full, plus attorneys' fees and costs, and has failed to perform his obligations under the Guaranty and materially breached it by failing to pay all amounts due MGSY as set forth in the Demand for Payment (Exhibit E) sent to Greenspan.

WHEREFORE, Plaintiff, MGSY Corporation, respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant Brad Greenspan in the amount of $416,975.92, plus late fees in the amount of $20,848.80, additional late fees through such time as

the past-due amounts are paid in full, attorneys' fees and costs, and grant such further relief as

this Court deems equitable and just.

Respectfully submitted,

**MGSY CORPORATION**

By: /s/ William M. McErlean
One of Its Attorneys

William M. McErlean, ARDC #3122871
Jennifer A. Kimball, ARDC #6291184
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313

# Exhibit A

# *US Capital Equipment Leasing, Inc.*

## MASTER LEASE AGREEMENT
Number: US 1195-000
Dated as of March 1, 2007 by and between

Lessor: US Capital Equipment Leasing, Inc.     and     Lessee: LiveUniverse, Inc.
14742 Plaza Drive                                               9255 Sunset Boulevard
Suite 203                                                           Suite 1010
Tustin, CA 92780                                                West Hollywood, CA 90069
Contact: Contract Administration                       Contact: David Newberg, CFO
Phone: (714) 505-3700                                      Phone: (310) 550-5417

1.     LEASE. Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the personal property including intangibles (the "Equipment") described in one or more Rental Schedules (herein called "Schedule(s)") to this Master Lease Agreement. Each such Schedule incorporates by this reference, the terms and conditions set forth in this Master Lease Agreement and constitutes a separate lease (the "Lease"). The lease of Equipment under each Lease shall be for such term and such rents as may be agreed to by execution of the Schedules, and this Master Lease Agreement shall control and be effective as to all such Schedules, the same as though set forth therein unless expressly amended or modified in writing for particular Schedules. The term "Equipment" as used in this Master Lease Agreement shall refer to items leased under all Schedules and the terms hereof, unless expressly amended or modified in writing, shall apply equally to all such Equipment.

2.     TERM AND RENT. The Initial Term for each item of Equipment shall be for the period specified in the applicable Schedule, and Lessee shall pay Lessor, throughout the Initial Term for the use of the Equipment, the Rent specified in the applicable Schedule. The Initial Term and Rent with respect to each item of Equipment shall commence as set out in the applicable Schedule.

3.     LATE CHARGES. Time is of the essence in this Lease. If any Rent or other amount due hereunder is not paid within ten (10) days after the due date thereof, Lessor shall have the right to add and collect and Lessee agrees to pay a late charge on, and in addition to, such unpaid Rent for each month or part thereof that such Rent remains unpaid or other charges, equal to five percent (5%) of such unpaid Rent or a lesser amount if established by any state of federal statute applicable thereto.

4.     DISCLAIMER OF WARRANTIES. Lessee acknowledges that Lessor is not the manufacturer of the Equipment, nor manufacturer's agent, and Lessee represents that Lessee has selected the Equipment leased hereunder based upon Lessee's judgment prior to having requested Lessor to purchase the same for leasing to Lessee, and Lessee agrees that as between Lessor and Lessee, the Equipment leased hereunder is of a design, size, fitness and capacity selected by Lessee and that Lessee is satisfied that the same is suitable and fit for its intended purposes. LESSEE FURTHER AGREES THAT LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF WHATSOEVER NATURE, DIRECTLY OR INDIRECTLY, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO SUITABILITY, DURABILITY, FITNESS FOR USE AND MERCHANTABILITY OF ANY SUCH EQUIPMENT, THE PURPOSES AND USES OF THE LESSEE THE CHARACTERIZATION OF THE LEASE FOR TAX, ACCOUNTING OR OTHER PURPOSES, COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENTAL REQUIREMENTS, OR OTHERWISE. Lessee specifically waives all rights to make claim against Lessor herein for breach of any warranty of any kind whatsoever. Notwithstanding the foregoing, Lessee shall be entitled to the benefit of any applicable manufacturer's warranties received by Lessor and to the extent assignable, and Lessor hereby assigns such warranties to Lessee for the term of the applicable Schedule. Lessor shall take such actions as may reasonably be necessary to assign such warranties to Lessee. Lessor shall not be liable to Lessee for any loss, damage or expense of any kind or nature caused directly or indirectly by any Equipment leased hereunder or for the use or maintenance thereof, or for the failure of operations thereof, or for the repairs, service or adjustment thereto, or by any delay or failure to provide any thereof, or by any interruption of service or loss of use thereof or for any loss of business or any other damage whatsoever and howsoever caused. No defect or unfitness of the Equipment shall relieve Lessee of the obligation to pay Rent, or to perform any other obligation under this Lease.

5.     USE, OPERATION AND MAINTENANCE. Lessee shall use the Equipment in the manner for which it was designed and intended, solely for Lessee's business purposes, in accordance with all manufacturer manuals and instructions and in compliance with all applicable laws, regulations and orders. Lessee, at Lessee's own cost and expense, shall keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted, and shall furnish all parts, mechanisms, devices and servicing required therefore and necessary to comply with all applicable health and safety standards. The Equipment, upon return to Lessor, shall be in such condition as to qualify for a maintenance agreement with the manufacturer or such other party as may be acceptable to Lessor, if such agreement is customarily available, without

additional cost to Lessor, but nothing contained herein shall require the Lessee to modify or upgrade the equipment. All replacement parts and repairs at any time made to or placed upon the Equipment shall become the property of Lessor. Lessee may, with Lessor's prior written consent, which shall not be unreasonably withheld, make such alterations, modifications or additions to the Equipment as Lessee may deem desirable in the conduct of its business; provided the same shall not diminish the value or utility of the Equipment, or cause the loss of any warranty thereon or any certification necessary for the maintenance thereof, and shall be readily removable without causing damage to the Equipment. Upon return to Lessor the Equipment as to which such alterations, modifications or additions have been made, Lessee, if requested to do so by Lessor, shall remove the same and restore the Equipment to its original condition, reasonable wear and tear only being excepted, and, if not so removed, title thereto shall automatically vest in Lessor. Lessor acknowledges that any data files or software developed or installed by Lessee which is resident on the equipment shall be and remain the property of Lessee; provided however that the Lessor shall have no obligation or responsibility to remove or return same to Lessee.

LESSEE SHALL KEEP THE EQUIPMENT FREE AND CLEAR FROM ALL LIENS, CHARGES, ENCUMBRANCES, LEGAL PROCESS AND CLAIMS. LESSEE SHALL NOT ASSIGN, SUBLET, HYPOTHECATE, SELL, TRANSFER OR PART WITH POSSESSION OF THE EQUIPMENT OR ANY INTEREST IN THIS LEASE, AND ANY ATTEMPT TO DO SO SHALL BE NULL AND VOID AND SHALL CONSTITUTE A DEFAULT HEREUNDER. LESSEE SHALL NOT MOVE THE EQUIPMENT FROM THE LOCATION NOTED IN THE SCHEDULES WITHOUT THE PRIOR WRITTEN NOTICE TO LESSOR FIVE DAYS IN ADVANCE OF THE MOVE. NEITHER THIS LEASE NOR ANY INTEREST IN THE EQUIPMENT IS ASSIGNABLE OR TRANSFERABLE BY LESSEE BY OPERATION OF LAW. LESSEE AGREES NOT TO WAIVE ITS RIGHT TO USE AND POSSESS THE EQUIPMENT IN FAVOR OF ANY PARTY OTHER THAN LESSOR AND FURTHER AGREES NOT TO ABANDON THE EQUIPMENT TO ANY PARTY OTHER THAN LESSOR. SO LONG AS LESSEE FAITHFULLY PERFORMS AND MEETS EACH AND EVERY MATERIAL TERM AND CONDITION TO BE PERFORMED OR MET BY LESSEE UNDER THIS LEASE, LESSEE'S QUIET AND PEACEFUL POSSESSION OF THE EQUIPMENT WILL NOT BE DISTURBED BY LESSOR OR ANYONE CLAIMING BY, THROUGH OR ON BEHALF OF LESSOR.

6.    TITLE.  The Equipment is and at all times shall remain the sole and exclusive personal property of Lessor (subject to Section 17 hereof). No right, title or interest in the Equipment shall pass to Lessee other than the right to maintain possession and use of the Equipment for the full lease term, conditioned upon Lessee's compliance with the terms and conditions of this Lease. If requested by Lessor, Lessee shall affix to or place on the Equipment, at Lessors expense, plates or markings indicating Lessor's ownership. Lessee covenants and agrees that the Equipment is, and will at all times, remain the personal property of Lessor (subject to Section 17 hereof). If requested by Lessor, Lessee will make reasonable efforts to obtain a waiver on any Equipment that may be deemed a fixture in recordable form, from all persons with a real property interest in the premises wherein the Equipment may be located, waiving any claim with respect thereto. Lessor shall have the right from time to time during normal business hours, with reasonable notice, to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment. Lessee agrees that this Master Lease Agreement and any applicable schedules constitute a true lease. However, if this transaction is deemed to be a Lease intended for security, Lessee grants Lessor a purchase money security interest in the equipment (including any replacements, substitutions, additions, attachments and proceeds).

7.    TAXES.  Lessee shall promptly reimburse Lessor for, or shall pay directly if so requested by Lessor, as additional Rent, all taxes, charges and fees which may now or hereafter be imposed or levied by any governmental body or agency upon or in connection with the purchase, ownership, lease, possession, use or location of the Equipment or otherwise in connection with the transactions contemplated by the Lease, excluding, however, all taxes on or measured by the net income of Lessor, and shall keep the Equipment free and clear of all levies, liens or encumbrances arising therefrom. Lessor shall file, as owner and party responsible for payment of tax, personal property tax return relating to the Equipment unless otherwise provided in writing. Lessee shall promptly reimburse Lessor in full for all property taxes levied on or assessed against the Equipment during the Initial Term and all renewals or extensions. Failure of Lessee to promptly pay amounts due hereunder shall be the same as failure to pay any installment of Rent. If Lessee is requested by Lessor to file any returns or remit payments directly to any governmental body or agency as provided for hereunder, Lessee shall provide proof of said filing or payment to Lessor upon request.

8.    LOSS OR DAMAGE OF EQUIPMENT.  Lessee hereby assumes and shall bear the risk of loss for destruction of or damage to the Equipment from any and every cause whatsoever, whether or not insured, until the Equipment is returned to Lessor. No such loss or damage shall impair any obligation of Lessee under this Lease, which shall continue in full force and effect. In event of damage to or theft, loss or destruction of the Equipment (or any item thereof), Lessee shall promptly notify Lessor in writing of such fact and of all details with respect thereto, and shall, within thirty (30) days of such event, at Lessor's option, (a) place the same in good repair, condition and working order or, (b) Lessee shall have the option to, at Lessee's expense, substitute Equipment (or any item thereof) of the identical Manufacture, Make, Model, and Features, unless this option is expressly prohibited in a specific Lease, in good repair, condition and working order and transfer clear title to such replacement property to Lessor whereupon such property shall be subject to this Lease and be deemed the Equipment for purposes hereof; or, (c) pay Lessor an amount equal to the sum of (i) all Rent accrued to the date of such payment, plus (ii) the "Stipulated Loss Value" as set forth in the Schedules, whereupon this Lease shall terminate, except for Lessee's duties under Section 10 hereof, solely with respect to the Equipment (or any item thereof) for which such payment is received by Lessor.  Upon payment of the amount set forth in (c), the Rent for such Schedules shall be reduced proportionately. Any insurance proceeds received with respect to the Equipment (or any item thereof) shall be applied, in the

event option (c) is elected, in reduction of the then unpaid obligations, including the Stipulated Loss Value, of Lessee to Lessor, if not already paid by Lessee, or, if already paid by Lessee, to reimburse Lessee for such payment, or, in the event option (a) or (b) is elected, to reimburse Lessee for the costs of repairing, restoring or replacing the Equipment (or any item thereof) upon receipt by Lessor of evidence, satisfactory to Lessor, that such repair, restoration or replacement has been completed, and an invoice therefor.

9.　　INSURANCE. Lessee shall keep the Equipment insured against theft and all risks of loss or damage from every cause whatsoever for not less than the greater of the replacement cost, new, or the Stipulated Loss Value of the Equipment and shall carry public liability insurance, both personal injury and property damage, and Lessee shall be liable for all deductible portions of all required insurance. All said insurance shall be in form and amount and with companies satisfactory to Lessor. All insurance for theft, loss or damage shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall name Lessor (or Lessor's assignee as appropriate) as additional insured and shall be endorsed to state that it shall be primary insurance as to Lessor. Any other insurance obtained by or available to Lessor shall be secondary insurance. Lessee shall pay the premiums therefor and deliver to Lessor a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverage is in effect; provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policies or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Lessor, that it will give Lessor thirty (30) days written notice prior to the effective date of any alteration or cancellation of such policy. The proceeds of such insurance payable as a result of loss of or damage to the Equipment shall be applied as set out in Section 8 hereof. After thirty days from an event of loss or damage as set out in Section 8 hereof, Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policies.

In case of the failure of Lessee to procure or maintain said insurance or to comply with any other provision of this Lease, Lessor shall have the right but shall not be obligated, to effect such insurance or compliance on behalf of Lessee. In that event, all monies spent by and expenses of Lessor in effecting such insurance or compliance shall be deemed to be additional Rent, and shall be paid by Lessee to Lessor upon demand.

10.　　LESSEE INDEMNITY. Lessee assumes liability for and shall indemnify, save, hold harmless (and, if requested by Lessor, defend) Lessor, it's officers, directors, employees, agents or assignees from and against any and all claims, actions, suits or proceedings of any kind and nature whatsoever, including all damages, liabilities, penalties, costs, expenses and legal fees (hereinafter "Claim(s)") based on, arising out of, connected with or resulting from this Lease of the Equipment, including without limitation the manufacture, selection, purchase, delivery, acceptance, rejection, possession, use or operation of the equipment and claims by third parties resulting from or relating to ownership, return or disposition of the Equipment, and including without limitation Claims arising in contract or tort (including negligence, strict liability or otherwise), arising out of latent defects (regardless of whether the same are discoverable by Lessor or Lessee) or arising out of any trademark, patent or copyright infringement. If any Claim is made against Lessee or Lessor, the party receiving notice of such Claim shall promptly notify the other, but the failure of such person receiving notice so to notify the other shall not relieve Lessee of any obligation hereunder.

11.　　TAX INDEMNITY. Lessee acknowledges that (1) Lessor intends to claim and take the accelerated cost recovery deductions available in the manner and as provided by section 168 and related sections of the Internal Revenue Code of 1986, as amended, and regulations adopted thereunder (the "Code") as in effect on the date hereof (such deductions being referred to hereinafter as "Tax Benefits") and (2) the Rent payable hereunder has been computed upon the assumption that such Tax Benefits shall be available to Lessor. Lessee represents and warrants to Lessor that all of the Equipment is, at and after the time of delivery of the Equipment to the location set forth in the Schedules, new, unless designated otherwise on the Schedules. Lessee further represents and warrants that it has not, and will not at any time from such delivery through the term of this Lease take any action or omit to take any action (whether or not the same is permitted or required hereunder) which will result in the loss by Lessor of all or any part of the Tax Benefits. If as a result of any act, omission or misrepresentation of Lessee, the Tax Benefits are lost, disallowed, eliminated, reduced, recaptured, compromised or are otherwise unavailable to Lessor (any of the foregoing being a "Loss"), Lessee shall promptly pay to Lessor on demand, as additional Rent, an amount which will, after deduction therefrom of all taxes required to be paid in respect of the receipt thereof, enable Lessor to receive the same rate of return that Lessor would have realized had such Loss not occurred, together with any interest, penalties or additions to tax. Upon payment of such amount by Lessee, such act, omission or misrepresentation of Lessee which resulted in a Loss shall not be deemed a default hereunder. Any event which by the term of this Lease requires payment by Lessee to Lessor of the Stipulated Loss Value of the Equipment, shall not constitute the act, omission or misrepresentation of Lessee for purposes of the foregoing sentence. Lessee hereby agrees to exercise in good faith its best efforts (determined in the sole discretion of Tax Counsel of Lessor to be reasonable, proper and consistent with the overall tax interest of Lessor) to avoid requiring Lessee to pay the tax indemnity referred to in this Section 11; provided, however, Lessor shall have the sole discretion to determine whether or not to undertake judicial or administrative proceedings beyond the level of an Internal Revenue Service auditing agent; and provided further, that Lessor shall not be required to take any action pursuant to this sentence unless and until Lessee shall have agreed to indemnify Lessor for any and all expenses (including attorney's fees), liabilities or losses which Lessor may incur as a result of taking such action. For purposes of this Section 11, the term "Lessor" shall include the entity or entities, if any, with which Lessor consolidates its tax return.

12.    RETURN OF EQUIPMENT.  Lessee shall give Lessor one-hundred and eighty ( 180 ) days written notice prior to the expiration of the Initial Term of its intent to return the Equipment.  Upon expiration of the Initial Term or other termination pursuant to the terms of this Lease, Lessee shall immediately return all but not less than all of the Equipment and all related accessories to Lessor, or to such place within the continental United States as Lessee may be instructed by Lessor.  The Equipment shall, at Lessee's sole expense, be crated and shipped in accordance with the manufacturer's specifications, freight prepaid and properly insured.  If the Equipment, upon its return, is not in good repair, condition and working order, ordinary wear and tear excepted, and has not been maintained in accordance with Section 5 hereof, Lessee shall promptly reimburse Lessor for all reasonable costs incurred to place the Equipment in such condition.  Lessor shall promptly notify Lessee if equipment is not in good repair, condition and working order, ordinary wear and tear excepted, and has not been maintained in accordance with Section 5 hereof, and Lessee shall have the right of inspection within a reasonable period of time, not to exceed five days after receiving written notice of such condition from Lessor.

13.    AUTOMATIC RENEWAL.  The Lease shall automatically renew for additional three-month terms until notice of termination has been properly given and the Equipment returned in accordance herewith if; (a) written notice as specified in Section 12 hereof is not received by Lessor; or (b) such notice is received by Lessor but the Equipment is not returned upon the expiration of the Initial Term.  Lessee shall pay as Rent to Lessor  an amount based on the average monthly rent during the Initial Term on the due dates set out in the Schedules until terminated by either party by giving ninety (90) days prior written notice.  All terms and conditions of this Lease shall continue in full force and effect during any extension or renewal hereof.

14.    DEFAULT AND REMEDIES.  (a) Lessee shall be in default hereunder if (i) Lessee fails to pay Rent or any other payment required hereunder within ten (10) business days of the due date thereof, (ii) Lessee fails to observe, keep or perform any other term or condition of this Lease and such failure continues for thirty (30) days following receipt of written notice thereof from Lessor, (iii) any representation or warranty made by Lessee herein or in any document delivered to Lessor in connection herewith shall prove to be false or misleading, or (iv) Lessee defaults under any other obligation to Lessor.  (b) If Lessee is in default, Lessor shall have the right to take any one or more of the following actions:  (i) proceed by appropriate court action or actions at law or in equity to enforce performance by Lessee of the terms and conditions of this Lease and/or recover damages for the breach thereof; and/or (ii) by written notice to Lessee, which notice shall apply to all Schedules hereunder except as specifically excluded therefrom by Lessor, declare due and payable, and Lessee shall without further demand, forthwith pay to Lessor an amount equal to any unpaid Rent then due as of the date of such notice plus, as liquidated damages or loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value as set forth in the Schedules.  Lessee shall return the Equipment to Lessor as provided in Section 12.  Should Lessee fail to return the Equipment within fifteen (15) business days of receipt of legal notice, Lessor may, personally, or by its agents, and with or without notice of legal process, enter upon the premises where the Equipment is located, without liability for trespass or other damages and repossess the Equipment free from all claims by Lessee.  Return or repossession of the Equipment shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing.  With respect to Equipment returned to or repossessed by Lessor, if Lessor has not terminated this Lease, Lessor will, in a commercially reasonable manner, and upon such terms as Lessor may determine in its sole discretion, either sell such Equipment at one or more public or private sales or re-lease the Equipment.  The proceeds of sale or re-lease shall be applied in the following order or priority:  (i) to pay all Lessor's fees, costs and expenses for which Lessee is obligated pursuant to (c), below; (ii) to the extent not previously paid by Lessee, to pay Lessor its liquidated damages hereunder and all other sums then remaining unpaid hereunder; and (iii) to reimburse Lessee for any sums previously paid by Lessee to Lessor as liquidated damages; and (iv) any surplus shall be retained by Lessor.  In the event the proceeds of sale or re-lease are less than the sum of the amounts payable under (i) and (ii), Lessee shall pay Lessor such deficiency, forthwith.   (c) Lessee shall be liable for all reasonable legal and collection fees, costs and expenses arising from Lessee's default and the exercise of Lessor's remedies hereunder, including costs of repossessions, storage, repairs, reconditioning and sale or re-leasing of the Equipment.  (d) In the event that any court of competent jurisdiction determines that any provision of this Section 14 is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages.  Any repossession sale or re-lease of the Equipment shall not bar an action for damages for breach of this Lease, as hereinabove provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess the Equipment.  No express or implied waiver by Lessor of any default shall in any way be, or be construed to be, a continuing waiver or a waiver of any future or subsequent default.

15.    FURTHER ASSURANCES.  Lessee agrees, at the request of Lessor, to execute and deliver to Lessor any reasonable financing statements, fixture filings or other instruments necessary for expedient filing, recording or perfecting the interest and title of Lessor in this Lease and the Equipment, agrees that a copy of this Lease and any Schedule may be so filed, and agrees that all costs incurred in connection therewith (including, without limitation, filing fees and taxes) shall be paid by Lessee, and agrees to promptly,  at Lessee's expense, deliver such other reasonable documents and assurances, and take such further action as Lessor may request, in order to effectively carry out the intent and purpose of this Lease and Schedules.  Additionally, Lessee agrees that where permitted by law, a copy of the financing statement may be filed in lieu of the original.  Lessee shall, as soon as practicable, deliver to Lessor, Lessee's future quarterly and annual reports of financial condition, prepared in accordance with generally accepted accounting principles, in a manner consistently applied; which reports Lessee represents and warrants shall be prepared in accordance with Generally Accepted Accounting Principles.  Lessee's covenants, representations, warranties and indemnities contained in Sections 7, 10, and 18 hereof  are made for the

benefit of Lessor and shall survive, remain in full force and effect and be enforceable after the expiration or termination of this Lease for any reason.

16.    ACCEPTANCE OF EQUIPMENT: NON CANCELABLE. Lessee's acceptance of the Equipment shall be conclusively and irrevocably evidenced by Lessee signing the Certificate of Acceptance in the form provided or requested by Lessor and upon acceptance, the Schedules shall be noncancelable for the Initial Term thereof. If Lessee cancels or terminates the Schedules after its execution and prior to delivery of the Equipment or if Lessee fails or refuses to sign the Certificate of Acceptance as to all or any part of the Equipment within a reasonable time, not to exceed ten (10) business days, after the Equipment has been delivered, in which event Lessee will be deemed to have cancelled the Schedule, Lessee shall automatically assume all of Lessor's purchase obligations for the Equipment and Lessee agrees to indemnify and defend Lessor from any claims, including any demand for payment of the purchase price for the Equipment, by the manufacturer or seller of the Equipment. In addition thereto, Lessee shall pay Lessor (a) all of Lessor's out-of-pocket expenses and (b) a sum equal to one percent (1%) of the total rents for the lease term as liquidated damages, the exact sum of which would be extremely difficult to determine and is reasonably estimated hereby, to reasonably compensate Lessor for credit review, document preparation, ordering equipment and other administrative expenses. Lessor may apply any advance Rent payments to sums due from Lessee under (a) and (b) above.

17.    ASSIGNMENT. Lessee acknowledges and agrees that Lessor may, at any time, without notice to or consent of Lessee, assign its rights but not its obligations under this Lease and/or mortgage, or pledge or sell the Equipment. Such assignee or mortgagee may re-assign this Lease and/or mortgage without notice to Lessee. Any such assignee, buyer, transferee, grantee or mortgagee shall have and be entitled to exercise any and all rights and powers of Lessor under this Lease, but such assignee, buyer, transferee, grantee or mortgagee shall not be obligated to perform any of the obligations of Lessor hereunder other than Lessor's obligation not to disturb Lessee' quiet and peaceful possession of the Equipment and unrestricted use thereof for its intended purpose during the term thereof and for as long as Lessee is not in default of any of the provisions hereof.

Without limiting the foregoing, Lessee further acknowledges and agrees that in the event Lessee receives written notice of an assignment from Lessor, Lessee will pay all Rent and any and all other amounts payable by Lessee under any Schedule to such assignee or mortgagee or as instructed by Lessor, notwithstanding any defense or claim of whatever nature, whether by reason of breach of such Schedule or otherwise which it may now or hereafter have as against Lessor (Lessee reserving its right to make claims directly against Lessor). Lessee agrees to confirm in writing receipt of notice of assignment as may be reasonably requested by assignee or mortgagee.

18.    REPRESENTATIONS AND WARRANTIES. Lessee represents and warrants to Lessor that: (i) the making of this Lease and any Schedule thereto executed by Lessee are duly authorized on the part of Lessee and upon execution thereof by Lessee and Lessor they shall constitute valid obligations binding upon, and enforceable against, Lessee; (ii) neither the making of this Lease or such Schedule, nor the due performance thereof by Lessee, including the commitment and payment of the Rent, shall result in any breach of, or constitute a default under, or violation of, Lessee's certificate of incorporation, by-laws, or any agreement to which Lessee is a party or by which Lessee is bound; (iii) Lessee is in good standing in its state of incorporation and in any jurisdiction where the Equipment is located, and is entitled to own properties and to carry on business therein; and (iv) no approval, consent or withholding of objection is required from any governmental authority or entity with respect to the entering into, or performance of this Lease or such Schedules by Lessee.

Lessee shall provide Lessor a Certified Copy of it's Corporate Resolutions and or a Certificate of Incumbency in the form provided by Lessor or such other form that Lessor deems acceptable.

Lessor has the power to enter into this Lease, and its execution has been duly authorized by all necessary corporate action on the part of the Lessor. Lessor is duly and validly organized and existing in good standing under the laws of the state of Ohio and has all power and authority to own its properties and carry on its business in the places where such properties are located and such business is conducted.

19.    NOTICES. Any notice required or given hereunder shall be deemed properly given when provided in writing (i) three (3) business days after mailed first class, overnight, or certified mail, return receipt requested, postage prepaid, addressed to the designated recipient at its address set forth at the heading hereof or such other address as such party may advise by notice given in accordance with this provision or (ii) upon receipt by the party to whom addressed in writing by personal delivery, commercial courier service, fax or other means which provides a permanent record of the delivery of such notice.

20.    DOCUMENTATION. Except for the payment of the Rent set forth in the applicable Schedules, for which invoices are provided as an accommodation to Lessee and not as a condition precedent to payment, Lessor shall use its best efforts to provide Lessee with reasonable documentation, including, statements, tax bills and/or invoices, evidencing payment obligations or reimbursement due to Lessor pursuant to the terms of this Lease.

21.    LESSEE'S OBLIGATIONS UNCONDITIONAL: NO OFFSET. This Lease is a net lease and except as expressly provided for herein, the Lessee shall not be entitled to any abatement or reduction of rent and Lessee hereby

agrees that Lessee's obligation to pay all rent and other amounts hereunder shall be absolute and unconditional under all circumstances.

22.    COUNTERPARTS.  Each Schedule may be executed in one or more counterparts, each of which shall be deemed an original as between the parties thereto, but there shall be a single executed original of each Schedule which shall be marked "Counterpart No. 1"; all other counterparts shall be marked with other counterpart numbers.  To the extent, if any, that a Lease constitutes chattel paper (as such term is defined in the Uniform Commercial Code) no security interest in the Schedule may be created through the transfer or possession of any counterpart other than Counterpart No. 1.  The Master Lease Agreement is incorporated by reference in each of the Schedules and shall not be chattel paper by itself.

23.    GOVERNING LAW.  This Lease and any Schedules thereto are entered into, under and shall be construed in accordance with, and governed by, the laws of the State of California without giving effect to its conflicts of laws principles.  The State of California shall have exclusive jurisdiction over any action or proceeding brought to enforce or interpret this Lease or otherwise in connection therewith.  LESSEE AND LESSOR EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY.

24.    FINANCE LEASE STATUS:  Lessee agrees that if Article 2A-Leases of the Uniform Commercial Code applies to this Master Lease Agreement and any and all schedules to this Master Lease Agreement, the Master Lease Agreement and schedules shall be considered a "Finance Lease" as that term is defined in Article 2A.  By signing this Master Lease Agreement and any schedules, Lessee agrees that either (a) Lessee has reviewed, approved, and received a copy of the supply contract or (b) that Lessor has informed Lessee of the identity of the supplier, that Lessee may have rights under the supply contract, and that Lessee may contact the supplier for a description of those rights.   TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

25.    MISCELLANEOUS.  For purposes of this Lease, the term "Rent" as used herein shall mean and include all amounts payable by Lessee to Lessor hereunder.  The captions of this Lease are for convenience only and shall not be read to define or limit the intent of the provision which follows such captions.  This Lease contains the entire agreement and understanding between Lessor and Lessee relating to the subject matter hereof.  Any variation or modification hereof and any waiver of any of the provisions or conditions hereof shall not be valid unless in writing signed by an authorized representative of the parties hereto.  Any provision of this Lease which is unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  Lessor's failure at any time to require strict performance by Lessee or  any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision.  The term "Lessee" as used herein shall mean and include any and all Lessees who have signed  this Lease, each of whom shall be jointly and severally bound thereby.

THIS LEASE IS A NON-CANCELABLE LEASE.  THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS WRITTEN ABOVE WHICH LESSEE ACKNOWLEDGES HAVING READ.  THIS LEASE SHALL BE EFFECTIVE UPON EXECUTION BY LESSEE AND LESSOR.

LESSOR:

US Capital Equipment Leasing, Inc.

By: _____

Title: _____President_____

Date Accepted: __3/14/07__

LESSEE:

_Live Universe, Inc_

By: _____

Title: _____CFO_____

Date Accepted: __3-2-07__

# Exhibit B

EXHIBIT A

RENTAL SCHEDULE NO. US 1195-004

This Rental Schedule dated and effective as of July 13th, 2007 is attached to and governed by the terms and provisions of the Master Lease Agreement dated March 1, 2007 ("Lease") by and between US Capital Equipment Leasing, Inc. ("Lessor") and LiveUniverse ("Lessee").

All the terms used herein which are defined in the Lease shall have the same meaning herein.

1.    The Equipment leased hereunder is as follows: See Attached Equipment List to Exhibit A

Lease Terms:

   Initial Term: 8 Quarters
   Equipment Cost: $482,270.02
   Rental Commencement Date: As Per Certificate of Acceptance
   Lease Rate Factor: 14.37% per quarter
   Rent: $ 69,302.20 payable quarterly in advance, plus applicable taxes
   Deposit: First and last Rental payments are due upon signing of the Certificate and Acceptance
($138,604.40)

2.    The Initial Term of the lease of the Equipment shall commence upon the Acceptance Date as indicated on the Certificate of Acceptance (the "Lease Commencement Date") and shall continue until expiration of the number of payment periods specified above after the Rental Commencement Date, which shall be the first day of the first calendar quarter following the final Lease Commencement Date. Lessee hereby authorizes Lessor to insert the Rental Commencement Date upon its receipt of the Certificate of Acceptance. Rent in the amount specified above, plus applicable taxes, shall be due on the Rental Commencement Date and on the same day of each and every consecutive payment period thereafter for the Initial Term. All Rent shall be due and payable to Lessor at such place as Lessor shall designate in writing. Additionally, Lessee shall pay, as interim rent, due and payable monthly in advance, for the period from and including the Lease Commencement Date to and including the day immediately preceding the Rental Commencement Date. The daily rent will be calculated on a 360 day year;

3.    Stipulated Loss Values as set out on Exhibit I attached hereto and incorporated herein;

4.    Options. Notwithstanding anything contained in the Lease to the contrary, so long as no default shall have occurred and be continuing, Lessee may, at Lessee's option, (i) purchase the Equipment leased pursuant to this Rental Schedule on an "as is, where is" basis, without representation or warranty, express or implied, at the end of the Initial Term at a price equal to the Fair Market Value thereof, plus applicable taxes, or (ii) extend the term of the Initial Term with respect to the Equipment leased pursuant to this Rental Schedule for the Fair Market Rental, plus applicable taxes, and for a period of time mutually agreeable to Lessor and Lessee.  "Fair Market Rental" shall be equal to the monthly rental which could be obtained in an arms-length transaction between an informed and willing lessee and an informed and willing lessor under no compulsion to lease. "Fair Market Value" shall be equal to the value which would be obtained in an arms-length transaction between an informed and willing buyer and an informed and willing seller under no compulsion to sell, and in such determination, costs of removal of the Equipment from its location of current use shall not be a deduction from such value. If Lessee and Lessor cannot agree on the Fair Market Value thereof, such value shall be determined by appraisal at the sole expense of Lessee.   Appraisal shall be a procedure whereby two recognized independent appraisers, one chosen by Lessee and one by Lessor, shall mutually agree upon the amount in question. If the appraisers are unable to agree upon the amount in question, a third recognized independent appraisers' evaluation shall be binding and conclusive on Lessee and Lessor.  This purchase or extension option as applicable shall only be available if Lessee gives Lessor ninety (180) days prior

Counterpart 1 of 2

(Only Counterpart 1 Hereof Shall Constitute Chattel Paper for the purpose of transferring or securing interest herein)

written notice of Lessee's irrevocable intent to exercise such option and Lessor and Lessee shall have agreed to all terms and conditions of such purchase or extension prior to the expiration date of the Initial Term.

5.    All Options awarded to Lessee shall apply to all, but not less than all, Equipment leased under this schedule. .

IN WITNESS WHEREOF, the parties hereto have caused this Rental Schedule to be duly executed on the date set forth below by their authorized representatives.

THIS RENTAL SCHEDULE CANNOT BE CANCELLED

Lessor:
US Capital Equipment Leasing, Inc.

By: _____

Title: PRESIDENT & CEO

Date: 12/18/07

Lessee:
LiveUniverse, Inc.

By: _____

Title: CFO

Date: 12-14-07

## EXHIBIT I
### Stipulated Loss Values
### To
### RENTAL SCHEDULE NO. US 1195-004

| Quarter Remaining | Percentage |
|---|---|
| 8 | 110 |
| 7 | 92.5 |
| 6 | 75 |
| 5 | 57.5 |
| 4 and thereafter | 40 |

Lessee's Initials

# CERTIFICATE OF ACCEPTANCE
## to
## RENTAL SCHEDULE # US 1195-004

### Dated July 13th 2007

In compliance with the terms, conditions and provisions of the Master Lease Agreement dated March 1st, 2007 ("Lease") by and between the undersigned ("Lessee") and US Capital Equipment Leasing, Inc. ("Lessor"), Lessee hereby:

(a)    certifies and warrants that all equipment described in the above-referenced Rental Schedule (the "Equipment") is delivered, inspected and fully installed, and operational as of the Acceptance Date as indicated below;

(b)    accepts all the Equipment for all purposes under the Lease and all attendant documents as of the date indicated on equipment list to Exhibit A ("Acceptance Date"); and

(c)    restates and reaffirms, as of such Acceptance Date, each of the representations, warranties and covenants heretofore given to Lessor in the Lease.

Lessor is hereby authorized to insert serial numbers on the Rental Schedule #US 1195-004.

Lessee:
LiveUniverse, Inc.

By: _____

Name: _____DAVID NEWBERG_____

Title: _____CFO_____

Date: _____12-18-07_____

(Only Counterpart 1 Hereof Shall Constitute Chattel Paper for the purpose of transferring or securing interest herein)

**Equipment List to Exhibit A**
**For Lease US 1195-004**
**Dated 07-13-07**

| | | Cost | | Total | | Acceptance Date |
|---|---|---|---|---|---|---|
| **DELL** | | | | | | |
| 5 | Windows SVR ENT 2003 R2 | $ | 2,049.10 | $ | 10,245.50 | 7/10/2007 |
| 1 | Windows SVR ENT 2003 R2 CD | $ | 22.40 | $ | 22.40 | 7/10/2007 |
| 5 | Core Xeon, 2.66Ghz, 16 GB DIMM, 146 GB HD | $ | 5,943.10 | $ | 29,715.50 | 8/27/2007 |
| 5 | Core Xeon, 2.66Ghz, 4 GB DIMM, 146 GB HD | $ | 5,068.00 | $ | 25,340.00 | 7/22/2007 |
| 5 | Core Xeon, 2.66Ghz, 16 GB DIMM, 146 GB HD | $ | 5,943.10 | $ | 29,715.50 | 7/22/2007 |
| 10 | Core Xeon, 2.66Ghz, 4 GB DIMM, 146 GB HD | $ | 3,977.10 | $ | 39,771.00 | 9/27/2007 |
| | | | | $ | 134,809.90 | |

| | | Cost | | Total | | |
|---|---|---|---|---|---|---|
| **FUSIONSTORM** | | | | | | |
| 1 | Cat6500 48-port 10/100/1000 GE | $ | 8,700.00 | $ | 8,700.00 | 06/30/07 |
| 1 | Cat6500 4-port 10 Gigabit Ethernet Module | $ | 11,600.00 | $ | 11,600.00 | " |
| 1 | 4G DAE Field Install | $ | 3,540.00 | $ | 3,540.00 | " |
| 15 | 146Gb 15K 4Gb FC Disk Upg | $ | 1,407.00 | $ | 21,105.00 | " |
| 1 | CX3-20C SPE-FIELD INSTALL | $ | 11,196.00 | $ | 11,196.00 | " |
| 1 | CX3-20 DAE OS FIELD INST | $ | 3,956.00 | $ | 3,956.00 | " |
| 3 | 4G DAE FIELD INSTALL | $ | 3,956.00 | $ | 11,868.00 | " |
| 15 | 146GB 15K 520BPS 4GB 12V | $ | 1,162.00 | $ | 17,430.00 | " |
| 45 | 750GB 7200RPM SATA II DRIVE | $ | 1,642.00 | $ | 73,890.00 | " |
| 4 | 5M MM FIBRE CABLE LC-LC | $ | 48.00 | $ | 192.00 | " |
| 2 | NAVI AGENT LINUX MEDIA | $ | - | $ | - | " |
| 1 | NAVI WORKGROUP MEDIA | $ | - | $ | - | " |
| 1 | POWERPATH LINUX KIT | $ | - | $ | - | " |
| 2 | LINUX SOFTWARE UTILITY KIT | $ | 28.00 | $ | 56.00 | " |
| 1 | CX3-20C DOCS AND RTU KIT | $ | - | $ | - | " |
| 1 | NAVI MGR CX3-20 WKGRP LIC | $ | 5,028.00 | $ | 5,028.00 | " |
| 2 | PPATH LINUX WGR | $ | 965.00 | $ | 1,930.00 | " |
| 1 | 36 MO SOFTWARE MAINTENANCE | $ | 1,991.00 | $ | 1,991.00 | " |
| 1 | 36 MO OPEN SW PPD MNT PRM | $ | 917.00 | $ | 917.00 | " |
| 1 | PREMIUM HARDWARE SUPPORT - WARR UPG | $ | - | $ | - | " |
| 1 | DISCOUNT | $ | (11,980.00) | $ | (11,980.00) | " |
| 1 | 10GBASE-LR XENPAK Module | $ | 2,465.00 | $ | 2,465.00 | 07/02/07 |
| 2 | Sup720 PFC-3BXL Plus 2x1Gig Mem | $ | 6,960.00 | $ | 13,920.00 | 07/03/07 |
| 1 | 10GBASE-SR-XENPAK Module | $ | 1,740.00 | $ | 1,740.00 | 07/03/07 |
| 2 | X3655, AMD Opteron, 2.6GHz | $ | 10,584.00 | $ | 21,168.00 | 07/10/07 |
| 2 | AMD Opteron Dual Core Processor, 2.6GHz | $ | - | $ | - | 07/10/07 |
| 16 | 4Gb (2x2GBKit), PC2-5300, DDR2 SDRAM | $ | - | $ | - | " |
| 4 | 146Gb SAS 10K SFP HS | $ | - | $ | - | " |
| 2 | ServeRAID-8i SAS Controller | $ | - | $ | - | " |
| 2 | Intel PRO/100 PT Dual Port Server Adapter | $ | - | $ | - | " |
| 2 | x3650 Redundant Power Supply 835W | $ | - | $ | - | " |
| 2 | ServicePac - HW Support 3yr, 24x7x2h response | $ | 680.00 | $ | 1,360.00 | " |
| 5 | Fusion per client license | $ | 82.00 | $ | 410.00 | 07/11/07 |
| 2 | Fusionmgr per server Lic | $ | 1,364.00 | $ | 2,728.00 | " |
| 2 | Fusionha License T2 | $ | 5,728.00 | $ | 11,456.00 | " |
| 2 | Fusion License T2 | $ | 18,998.00 | $ | 37,996.00 | " |

(Only Counterpart 1 Hereof Shall Constitute Chattel Paper for the purpose of transferring or securing interest herein)

| | | | | | |
|---|---|---|---|---|---|
| 2 | Fusiona main presup T2 | $ | 1,604.00 | $ | 3,208.00 | * |
| 2 | Fusion main presup T2 | $ | 5,344.00 | $ | 10,688.00 | * |
| 3 | Ibrix Domestic Professional Services per Unit | $ | 3,200.00 | $ | 9,600.00 | * |
| 1 | FusionStorm Discount | $ (18,688.00) | | $ (18,688.00) | | * |
| 1 | Catalyst 3750E 48 10/100/1000+2*10GE (X2), 265W | $ 11,397.00 | | $ 11,397.00 | | 07/16/07 |
| 1 | Power Cord, 110V | $ | - | $ | - | * |
| 1 | Cisco StackWise 50CM Stacking Cable | $ | - | $ | - | * |
| 1 | Zero (0) Cisco TwinGig Converter Module | $ | - | $ | - | * |
| 1 | CAT 3750E IOS Universal with Web Base Dev Mgr | $ | - | $ | - | * |
| 1 | 10GBASE-SR X2 Module | $ | 1,197.00 | $ | 1,197.00 | * |
| 1 | 10GBASE-SR X2 Module | $ | 1,197.00 | $ | 1,197.00 | * |
| 4 | 1 Port 4 GB PCI Express | $ | 829.00 | $ | 3,316.00 | 07/18/07 |
| 4 | Metered PDU 208V 30A 0U RM 20XC13 4XC19 | $ | 416.48 | $ | 1,665.92 | 07/20/07 |
| 1 | Smartnet 24x7x4 WS-C3750E-48TD-S | $ | 2,067.20 | $ | 2,067.20 | 07/25/07 |
| 1 | Professional Services (installation EMC CX3-20) | $ | 5,450.00 | $ | 5,450.00 | 07/27/07 |
| 2 | Sun Fire X4500 x64 Server | $ 28,150.00 | | $ 56,300.00 | | 07/30/07 |
| 4 | North American/Asian Power Cord | $ | - | $ | - | 07/30/07 |
| 2 | Sun Fire X4500 x64 Server | $ | - | $ | - | 07/31/07 |
| 4 | North American/Asian Power Cord | $ | - | $ | - | 07/31/07 |
| 4 | 1 Port 4 GB PCI Express | $ | 850.00 | $ | 3,400.00 | 10/29/07 |

$ 347,460.12

**TOTAL EQUIPMENT COST**                    $ 482,270.02

Lessee's Initials

(Only Counterpart 1 Hereof Shall Constitute Chattel Paper for the purpose of transferring or securing interest herein)

# Exhibit C



# INVOICE

**US CAPITAL**
Equipment Leasing, Inc.

14742 Plaza Drive
Suite 203
Tustin, CA  92780
Phone 714-505-3700   Fax 714-505-3701

**DATE:**
May 30, 2008

**INVOICE #110063**

**Bill To:**
LiveUniverse
840 Apollo Street, Ste 251
El Segundo, CA 90245

**For:**
Lease Schedule No. US1195-004

| DESCRIPTION | AMOUNT |
|---|---|
| July 1st through September 30th 2008 Rent | $        69,302.20 |
| Use tax | $         5,717.43 |
| **TOTAL** | $        75,019.63 |

**Make all checks payable to MGSY, Inc.**
**Remit payment to 7620 North Osceola Ave, Niles, IL 60714**
If you have any questions concerning this invoice, contact Accounting @ 714-505-3700

**THANK YOU FOR YOUR BUSINESS!**

# Exhibit D

# NOTICE OF DEFAULT
## to
## RENTAL SCHEDULE NO. US 1195-004
## to
## MASTER LEASE AGREEMENT
### Number: US 1195-000
### Dated as of March 1, 2007 by and between
### US Capital Equipment Leasing, Inc as Lessor
### And
### LiveUniverse, Inc. as Lessee

Pursuant to Section 14. of the above referenced Master Lease Agreement Lessee is hereby declared in default. Lessee may cure said default by immediate payment of Sixty-Nine Thousand, Three-Hundred and Two Dollars and twenty cents ($69,302.20) plus sales/use tax of Five-Thousand, Seven-Hundred and Seventeen Dollars and forty-three cents ($5,717.43 for a total amount of Seventy-Five Thousand, Nineteen Dollars and sixty-three cents ($75,019.63) paid to MGSY, Inc. remitted to 7620 North Osceola Avenue, Niles, Illinois 60714 via overnight carrier. In the event the above amount is not remitted in full, Lessor will exercise its right to take any one or more of the following actions: (i) proceed by appropriate court action or actions at law or in equity to enforce performance by Lessee of the terms and conditions of this Lease and/or recover damages for the breach thereof; and/or (ii) by written notice to Lessee, which notice shall apply to all Schedules hereunder except as specifically excluded therefrom by Lessor, declare due and payable, and Lessee shall without further demand, forthwith pay to Lessor an amount equal to any unpaid Rent then due as of the date of such notice plus, as liquidated damages or loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value as set forth in the Schedules. Lessee shall return the Equipment to Lessor as provided in Section 12. Should Lessee fail to return the Equipment within fifteen (15) business days of receipt of legal notice, Lessor may, personally, or by its agents, and with or without notice of legal process, enter upon the premises where the Equipment is located, without liability for trespass or other damages and repossess the Equipment free from all claims by Lessee. Return or repossession of the Equipment shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing. With respect to Equipment returned to or repossessed by Lessor, if Lessor has not terminated this Lease, Lessor will, in a commercially reasonable manner, and upon such terms as Lessor may determine in its sole discretion, either sell such Equipment at one or more public or private sales or re-lease the Equipment. The proceeds of sale or re-lease shall be applied in the following order or priority: (i) to pay all Lessor's fees, costs and expenses for which Lessee is obligated pursuant to (c), below; (ii) to the extent not previously paid by Lessee, to pay Lessor its liquidated damages hereunder and all other sums then remaining unpaid hereunder; and (iii) to reimburse Lessee for any sums previously paid by Lessee to Lessor as liquidated damages; and (iv) any surplus shall be retained by Lessor. In the event the proceeds of sale or re-lease are less than the sum of the amounts payable under (i) and (ii), Lessee shall pay Lessor such deficiency, forthwith. (c) Lessee shall be liable for all reasonable legal and collection fees, costs and expenses arising from Lessee's default and the exercise of Lessor's remedies hereunder, including costs of repossessions, storage, repairs, reconditioning and sale or re-leasing of the Equipment. (d) In the event that any court of competent jurisdiction determines that any provision of this Section 14 is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages. Any repossession sale or re-lease of the Equipment shall not bar an action for damages for breach of this Lease, as hereinabove provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess the Equipment. No express or implied waiver by Lessor of any default shall in any way be, or be construed to be, a continuing waiver or a waiver of any future or subsequent default.

**THIS NOTICE IS SENT BY LESSOR TO LESSEE VIA ELECTRONIC MAIL, ON July 1, 2008 AS ASERTED BY THE UNDERSIGNED OFFICER OF US Capital Equipment Leasing, Inc.**

BY:

TITLE: CEO

Dated: July 1, 2008

# Exhibit E

# BARNES & THORNBURG LLP

Suite 4400
One North Wacker Drive
Chicago, IL 60606-2833 U.S.A.
(312) 357-1313
Fax (312) 759-5646

www.btlaw.com

William M. McErlean
(312) 214-8820
william.mcerlean@btlaw.com

July 24, 2008

**VIA TELECOPY, 310-550-5911**
**VIA EMAIL, Kschuh@liveuniversal.com**
**bspan@earthlink.net and**
**VIA FEDERAL EXPRESS**

Ms. Kristen Schuh
General Counsel
LiveUniverse, Inc.
9255 Sunset Boulevard
West Hollywood, CA 90069

Mr. Brad Greenspan
CEO
LiveUniverse, Inc.
9255 Sunset Boulevard
West Hollywood, CA 90069

Mr. Brad Greenspan
264 South La Cienega Boulevard
Suite 1218
Beverly Hills, CA 90211

      Re:    Master Lease Agreement No. US 1195-000 and
             Rental Schedule No. US 1195-004 and Greenspan Guaranty

Dear Ms. Schuh and Mr. Greenspan:

     This firm represents MSGY Corporation ("MSGY"). As you know, MSGY is the Assignee of US Capital Equipment Leasing, Inc. ("US Capital") of all of its right, title and interest to Rental Schedule No. US 1195-004 under the Master Lease Agreement US 1195-000 by and between US Capital and LiveUniverse, Inc. ("LiveUniverse"), as well as Mr. Greenspan's Guaranty of all of LiveUniverse's obligations under the Rental Schedule and the terms of the Master Lease Agreement incorporated therein.

     You also were provided with a Notice of Default dated July 1, 2008 that LiveUniverse had defaulted under the Rental Schedule and Master Lease and that it could cure the Default by immediate payment of $75,019.63, which Default has not been cured within the time period permitted. As a result, you are hereby notified that under Section 14 of the Master Lease

Ms. Kristen Schuh
Mr. Brad Greenspan
July 24, 2008
Page 2


Agreement, Lessor hereby declares as immediately due and payable, in addition to the amount of
the unpaid defaulted lease payments, the sum of $361,702.51 representing the Stipulated Loss
Value of the Equipment leased under the Rental Schedule as provided in Section 14(b)(ii) of the
Master Lease Agreement. Demand is also hereby made for return of the Equipment as provided
in Section 14 and in the manner provided under Section 12 of the Agreement.  We will soon be
initiating and prosecuting litigation against LiveUniverse and Mr. Greenspan to recover all that
MSGY is owed, including its attorneys' fees and costs expressly as provided for in the Master
Lease Agreement and Guaranty. Time for a negotiated resolution is very short and running out.


                                    Sincerely yours,

                                    BARNES & THORNBURG LLP


                                    William M. McErlean


WMM/pab

cc:    Michael Morris
       Bradford E. Block


BARNES & THORNBURG LLP

# Exhibit F

LEASE GUARANTY

**LiveUniverse, Inc.** ("Lessee"), has entering into Master Equipment Lease Agreement Number: 1195-000 dated **March 1, 2007** ("Lease") with **US Capital Equipment Leasing, Inc.** ("Lessor") for the leasing of certain equipment pursuant to Schedules ("Schedules") to be executed in connection with the Lease. **Brad** Greenspan ("Guarantor") has a substantial financial interest in Lessee and believes that the execution and delivery of the Lease and Schedules is in the best interests of Guarantor and Lessee. As a condition precedent to the execution and delivery of the Lease and Schedules, Lessor has required that Guarantor execute and deliver this Guaranty. In consideration of Lessor entering into the Lease and all Schedules to be executed thereunder, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor does hereby agree as follows:

1. GUARANTY. Guarantor does hereby unconditionally, absolutely, continuously and irrevocably guarantee to Lessor, and Lessor's successors and assigns, the full and complete payment of all amounts of rent now or hereafter due or payable by Lessee under the Lease and all Schedules executed thereunder in the normal course of Lessee's business, as and when the same shall become due, and all other amounts now or hereafter due by Lessee to Lessor, or to Lessor's successors and assigns, under or by virtue of the Lease and said Schedules, and does further hereby unconditionally, absolutely, continuously and irrevocably guaranty to Lessor, and its successors and assigns, the full, prompt, faithful and complete payment, performance and discharge of all of the covenants, liabilities and obligations of Lessee under the Lease and said Schedules. Guarantor's obligation hereunder expressly encompasses any amounts which Lessor or its successor or assigns is required to disgorge because of the Lessee's insolvency. Guarantor's obligations and liabilities hereunder shall be absolute, and shall be without regard to any defense (legal or equitable), counter-claim, set-off, cross-claim or other claim which Guarantor may now, or at any time or times hereafter, have against Lessee, Lessor, any other party liable to Lessor in any way or manner, or against any other person, firm or corporation, for any reason whatsoever, all of which, for purposes of this Guaranty, Guarantor does hereby waive and release.

2. WAIVER. Notice of acceptance of this Guaranty as well as all demands, presentments, notices of protest and notices of every kind or nature, including those of any action or non-action on Lessor's part or on the part of the Lessee, or anyone else, are hereby fully waived by the undersigned. Upon default of the Lessee, Lessor may, at Lessor's option, proceed directly and at once, without notice, against the undersigned to collect and recover the full amount of the liability under the Lease, including all Schedules, or hereunder, or any portion thereof, without proceeding against the Lessee or any other person, or foreclosing upon, selling, or otherwise disposing of the lease equipment or collecting accrued rentals or other accrued payments. The undersigned hereby waives the right to require Lessor to proceed against the Lessee or to pursue any other remedy, and waives the pleading of any statute of limitations as a defense to the obligations hereunder. The undersigned assumes the responsibility for being and keeping himself informed of the financial condition of Lessee and of all other circumstances bearing upon the risk of liability hereunder which diligent inquiry

would reveal and that absent a request for such information by the undersigned, Lessor shall have no duty to advise the undersigned of information known to it regarding such condition, or any such circumstance. Lessor is hereby given full power to change, alter, cancel, renew, extend the Lease, including Schedules, and to grant consents and waivers of the terms and conditions thereof without in any way diminishing, releasing or discharging the liability of the undersigned hereunder and, such liability shall be continuing and shall only be affected by the full performance of Lessee of its obligations pursuant to said Lease and Schedules. No payments made by or on behalf of the undersigned pursuant to this Guaranty shall be deemed to discharge or diminish the continuing liability of the undersigned hereunder, unless and until written notice is given to Lessor that such payments are at the time thereof being made for the purpose of liquidating such liability.

3.  DURATION. This Guaranty shall continue in full force and effect throughout the term, or any renewal term, of the Lease and all Schedules executed thereunder in the normal course of Lessee's business, and for so long as any of Lessee's covenants or obligations under the Lease and said Schedules shall survive. In addition, this Guaranty shall continue in full force and effect notwithstanding any assignment of the Lease and any said Schedules by Lessee or the execution by Lessee of any sublease under the Lease and said Schedules, and notwithstanding the merger or consolidation of Lessee into or with any other corporation, the sale or other disposition of all or any part of Guarantor's interest in Lessee, or the sale, lease or exchange of all or substantially all of the assets, properties or business of Lessee. The obligations and liabilities of Guarantor hereunder shall continue unabated and in full force and effect notwithstanding any rejection, cancellation or termination of the Lease by a trustee in bankruptcy appointed for or on behalf of Lessee in connection with any proceedings brought under the Federal Bankruptcy Act or by any other similar party acting for or on behalf of Lessee under any similar State or Federal law for the relief of debtor; provided, however, in the event of any such rejection, cancellation or termination, if Guarantor shall assume all of Lessee's liabilities and obligations under the Lease and Schedules in writing, then Guarantor shall be entitled to all of the rights and privileges of Lessee thereunder.

4.  DEFAULT. The occurrence of any event of default specified in the Lease and Schedules shall likewise be deemed an event of default hereunder, without any further act by Lessor, or notice to Guarantor (it being understood and agreed that notice to Lessee shall likewise be deemed notice to Guarantor), and, upon the occurrence of any such event of default, Lessor shall have all the rights, as against Lessee and Guarantor, as are specified in the Lease and Schedules.

5.  MISCELLANEOUS. The undersigned further agrees, with demand, immediately to reimburse Lessor for all costs and expenses, including attorneys' fees, incurred in the enforcement of this Guaranty and/or the Lease and Schedules. This Guaranty shall be binding upon Guarantor, and shall inure to the benefit of Lessor, and their respective heirs, personal representatives, successors and assigns. Guarantor hereby expressly consents to any assignment by Lessor of all or any part of its rights hereunder in connection with any assignment by Lessor of all or any part of its rights under the Lease and Schedules thereunder, whether such assignment shall be for collateral purposes or otherwise. As soon as available, and in any event, within 90 days after the end of each calendar year, Guarantor agrees to deliver

to Lessor a copy of Guarantor's annual federal income tax return and balance sheet for the preceding fiscal year, and such additional information as Lessor may reasonably request.

Dated: **March 19, 2007**

Signature of Guarantor

**Brad Greespan**
**264 S LA Cienega Blvd. #1218**
**Los Angles, CA**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MGSY CORPORATION,<br>an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. |
| LIVEUNIVERSE, INC., a California corporation, and<br>BRAD GREENSPAN, an individual, | ) ) ) | |
| Defendants. | ) | |

## DISCLOSURE STATEMENT OF
## MGSY CORPORATION

Plaintiff, MGSY Corporation ("MGSY"), by its attorneys, Barnes & Thornburg LLP, pursuant to Fed. R. Civ. P. 7.1(a) and United States District Court for the Northern District of Illinois, Eastern Division, Local Rule 3.2, makes the following disclosure statement:

1.    MGSY has no parent corporation, and no publicly-held corporation owns more than 10% of MGSY's stock.

Respectfully submitted,

**MGSY CORPORATION**

By: s/ William M. McErlean_____
         One of Its Attorneys

William M. McErlean
Jennifer A. Kimball
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, IL  60606
Telephone:  (312) 357-1313
Facsimile:  (312) 759-5646

CHDS01 JKIMBALL 478606v1